## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| AGRIPROCESSORS, INC., | ) | Bankruptcy No. 08-2751 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| JOSEPH E. SARACHECK, in his | ) | |
| Capacity as Chapter 7 Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | Adversary No. 10-09213 |
| | ) | |
| v. | ) | |
| | ) | |
| BEST VALUE FOOD | ) | |
| PRODUCTS, LLC d/b/a | ) | |
| BEST VALUE FOODS, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER RE MOTION FOR LEAVE TO AMEND COMPLAINT
### (ECF Doc. No. 36.)

The Court held telephonic hearings on Defendant's Motion for Summary

Judgment and Plaintiff's Motion for Leave to File an Amended Complaint.

Desiree Kilburg appeared for Plaintiff Joseph Sarachek, Chapter 7 Trustee. M.

David Graubard appeared for Defendant, Best Value Food Products, LLC.

Plaintiff seeks to avoid transfers made by Debtor to Defendant as either

preferential transfers or fraudulent conveyances. The Court took the Motion to

Amend under advisement. The Court continued the hearing on the Motion for

Summary Judgment.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H), and (O).

## STATEMENT OF THE CASE

Defendant filed a Motion for Summary Judgment on Plaintiff's Complaint seeking to recover fraudulent conveyances or preferential transfers.  Plaintiff resisted and requested additional time for discovery.  The Court granted the additional time.  During discovery, Plaintiff filed a Motion for Leave to Amend Complaint.  The Court held telephonic hearings on the matters and took them under advisement.

The Court grants Plaintiff's Motion to Amend his Complaint.  Plaintiff acted diligently in moving to amend and Defendant's own actions and inactions contributed significantly to the need for and timing of the amendment.

## FACTUAL AND PROCEDURAL BACKGROUND

Debtor, Agriprocessors, Inc., was a kosher meat-processing company headquartered in Postville, Iowa.  Defendant is a company based in Brooklyn, New York.  It sells non-meat products and grocery items to shops and restaurants in Florida.  (ECF Doc. No. 21, ¶ 6.)  Defendant and Debtor conducted business together—often sharing customers and commingling employees.  (ECF Doc. No. 27-1, ¶ 4.)  Debtor was owned by Sholom Rubashkin.  Before Debtor's bankruptcy, Sholom Rubashkin also owned Defendant in partnership with his brothers Tzvi Rubashkin and Yossi Rubashkin.  (ECF Doc. No. 27-1, ¶ 3.)

2

Debtor's bankruptcy petition and accompanying documents, filed November

4, 2008, recited that its financial difficulties resulted from a raid conducted by U.S.

Immigration and Customs Enforcement in 2008.  The government arrested a total

of 389 workers at the Postville facility.  The raid led to numerous federal criminal

charges, including a high-profile case against Sholom Rubashkin.  Debtor's

Petition stated it had over 200 creditors as well as assets and liabilities in excess of

$50,000,000.

The Rubashkins transferred ownership of Defendant to Gutol Leiter and her

son, Shimon Leiter, a few days before or after Debtor's bankruptcy filing.  The

exact date is unclear based on the record.  (Id. at ¶ 8.)  Gutol Leiter is Rubashkins'

sister and Shimon Leiter is their nephew.  (Id.)  Shimon Leiter is currently

Defendant's Chief Financial Officer.  (ECF Doc. No. 21, ¶ 1.)  There is no

evidence about whether the Leiters were involved in the operation or ownership of

Defendant before the ownership transfer in November 2008.

The interaction between these two businesses—Defendant and Debtor—

requires some explanation.  The parties allege that business was often conducted

through "splits."  (ECF Doc. No. 21, at ¶ 5.)  Defendant describes "splits" as joint

deliveries to customers of both Debtor's and Defendant's goods.  Debtor's

employees made the deliveries.  The customers received separate invoices from

Debtor and Defendant, but would only write a single check as payment to Debtor.

(Id.)  When the customer paid Debtor, Debtor would then write a separate check to

3

Defendant for Defendant's share of the sale.  (Id.)  Defendant asserts the checks

written by Debtor to compensate Defendant for "splits" can be identified by either

customer names or identification codes included on the memo line.  (Id. at ¶ 9.)

The total value of the transactions alleged to be "splits" is $1,034,452.53.

The checks Debtor wrote to Defendant were not consistently made out to the

same organization.  Nineteen (19) of the transfers Debtor allegedly made in the

two years prior to the bankruptcy filing were made out to "Best Value, Inc.," not

Best Value Food Products, LLC, or Best Value Foods.  (Id., at ¶ 23.)  These 19

transfers totaled $242,491.99.  Some of these 19 checks were made out to "Best

Value" and other checks to "Best Value, LLC."  (Def. Ex. J, ECF Doc. No. 21.)

Defendant asserts that Debtor intended the checks written in this manner for a

business other than Defendant registered in New York.

In addition to the "splits" transactions and the checks Defendant believes

were misaddressed, Defendant alleges the remaining funds Plaintiff seeks to

recover were payments intended to be short-term loans to Defendant.  Defendant

claims Debtor often provided Defendant with short-term loans.  The three checks

identified by Defendant as short-term loan payments are three checks from Debtor:

check # 16683 for $48,000.00; check # 16718 for $50,000.00; and check # 16736

for $50,000.00.  (ECF Doc. No. 21, at ¶ 18.)  Defendant argues that it actually

repaid these loans through three separate payments to Debtor evidenced by checks

4

numbered 10405, 10406, and 10407.  (Def.'s Ex. F, ECF Doc. No. 21.)  Defendant

asserts Debtor made the loans with the intention Defendant would repay quickly.

On November 3, 2010, Plaintiff filed this adversary seeking to avoid 327

transfers made by Debtor to Defendant over a two year period totaling

$1,423,944.52.  Plaintiff seeks to avoid the payments as either preferential transfers

under 11 U.S.C. § 547(b) or fraudulent transfers under 11 U.S.C. § 548.  Plaintiff

claims he is entitled to avoid preferential transfers for up to one year before

Debtor's bankruptcy filing—rather than 90 days—because there was an insider

relationship between Debtor and Defendant under 11 U.S.C. § 547(b)(4)(B).  (ECF

Doc. No. 1 at ¶ 14.)  Plaintiff asserts the insider relationship arises from the fact

both companies were owned by Sholom Rubashkin during the one-year insider

preference period.  Plaintiff does not specify which transfers occurred within the

one-year period but does include a schedule of all transfers he is seeking to avoid.

(Pl.'s Exh. A, ECF Doc. No. 1.)  Plaintiff also claims he is entitled to avoid the

transfers as fraudulent conveyances for up to two years before Debtor's bankruptcy

filing under 11 U.S.C. § 548(a)(1)(B).  (ECF Doc. No. 1 at ¶ 12.)  Plaintiff notes

that the Debtor was insolvent at all times during the two-year period before the

petition.  (Id. at ¶ 10.)  Furthermore, Plaintiff is unaware of any reasonably

equivalent value provided by the Defendant to the Debtor in exchange for the

payments.  (Id. at ¶ 9.)

Defendant filed its Answer on January 10, 2011.  Defendant argued that the transactions between itself and Debtor were not preferences or fraudulent transfers because they were made for reasonably equivalent value, as a contemporaneous exchange of new value, fully supported by consideration, and occurred in the ordinary course of business between the parties.  (ECF Doc. No. 4, ¶¶ 21, 22, 25, 26.)  Defendant also denied it was an insider of Debtor and thus no extended reach-back period for preferential or fraudulent transfers applied.  (Id. at ¶ 23.) Finally, the Defendant alleged the Debtor was not insolvent during the entire two-year period prior to the petition date.  (Id. at ¶ 24.)

The Court entered a Scheduling Order on February 4, 2011, establishing March 7, 2011, as the final day for amendments to pleadings.

On May 26, 2011, Defendant filed a Motion to Extend the Deadline for Completion of Discovery to July 15, 2011.  Plaintiff had no objection.  The Court extended discovery as Defendant requested.  The Court also granted extension of the dispositive motions and pretrial statement deadlines.

On June 14, 2011, Plaintiff filed a Motion to Extend the Discovery, Dispositive Motion, and Pretrial Statement deadlines for an additional month.  The Motion recited that the parties agreed to the extension after they met and conferred. In particular, they agreed they needed additional time "to collect the relevant documents needed to form their respective arguments and to take depositions."

(ECF Doc. No. 10.)  The Court extended the discovery deadline to August 15,

2011, and the other deadlines as the parties requested.

On August 23, 2011, Defendant filed another Motion to Extend Discovery

and related deadlines.  The Motion noted:

> Unfortunately, the extent of the discovery responses by the defendant
> is more extensive than contemplated, and since the defendant is
> located in Miami, FL, it has been more difficult to get all the
> information necessary to respond to plaintiff's discovery request.

(ECF Doc. No. 13, ¶ 4.)  The Motion recited that at Defendant's request, Plaintiff

agreed to the extension requested.  The Court extended the discovery deadline to

October 3, 2011, the dispositive motions deadline to November 3, 2011, and the

joint pretrial statement until December 3, 2011.

On September 7, 2011, Plaintiff filed another Motion to Extend Discovery

and related deadlines.  Plaintiff's Motion again stated the parties had conferred and

agreed that additional time was needed "to allow the parties to collect the relevant

documents . . . ."  The parties requested and the Court granted an extension of the

deadlines for discovery to November 15, 2011, dispositive motions to December

15, 2011, and the joint pretrial statement until January 15, 2012.

On September 22, 2011, Plaintiff filed another Motion to Extend Discovery

and related deadlines.  This Motion recited that because of difficulties experienced

in scheduling depositions, the parties "agree that an additional 30 days for

discovery is necessary . . . ."  (ECF Doc. No. 17.)  The Court granted the parties'

7

request to extend discovery to December 15, 2011, dispositive motions to January 15, 2012, and the joint pretrial statement until February 15, 2012.

On October 26, 2011, Defendant filed the last Motion to Extend Discovery and related deadlines. It noted, like the Plaintiff's September 22, 2011 Motion, that the parties have had trouble scheduling depositions. The Motion noted they had one scheduled for January 10, 2012, only five days before discovery was to end. The Motion noted they "have agreed that additional time is necessary to complete discovery." (ECF Doc. No. 19.) They then jointly requested a two month extension for all deadlines. The new scheduling order granted the request and set the deadline for completion of discovery to February 15, 2012, dispositive motions to March 15, 2012, and the joint pretrial statement until May 15, 2012.

Defendant filed a Motion for Summary Judgment and supporting Brief on January 23, 2012. (ECF Doc. No. 21.) On February 10, 2012, Plaintiff filed an Objection to the Motion for Summary Judgment and a Motion to Extend Time for Discovery to resist the Motion.

Plaintiff sought additional time for discovery for two depositions and "to attempt to resolve a discovery dispute without Court intervention." (ECF Doc. No. 28.) Defendant resisted this Motion to Extend. It asserted the deposition testimony was not relevant to the original Complaint. Defendant pointed back to the February 4, 2011 scheduling order that provided "any motion to amend pleadings 'shall be filed by March 7, 2011.'" (ECF Doc. No. 6.) The Court held a

8

hearing on those Motions on February 17, 2012. At the hearing, the Court granted Plaintiff's Motion to Extend Time for Discovery to April 17, 2012. The Court also deferred ruling on the Motion for Summary Judgment until discovery was completed.

On April 2, 2012, Plaintiff filed another Motion to Extend. That motion recited that the parties agreed that because of the Passover holiday, they would like discovery extended to May 7, 2012, dispositive motions to June 7, 2012, and the pretrial statement until July 7, 2012. The Court granted the motion.

Plaintiff also filed a Motion for Leave to Amend on April 2, 2012. (ECF Doc. No. 36.) The proposed Amended Complaint increased the number of alleged preferential transfers or fraudulent conveyances to 751. The total value of all alleged transfers rose from $1,423,944.52 in the original Complaint to $2,945,551.09 in the proposed Amended Complaint. Defendant filed an Objection to the Motion to Amend on April 30, 2012.

On May 3, 2012, before the hearing on Plaintiff's Motion to Amend, Plaintiff filed a Motion to Compel. The Motion to Compel asserted Defendant had failed to fully answer interrogatories sent in May 2011. The interrogatories asked for every transfer or payment from Debtor to Defendant in the two years before the bankruptcy filing. Defendant originally answered the interrogatories only regarding transfers within the scope of the Complaint. However, it eventually agreed it needed to provide an answer that described even those transfers not

9

covered by the original Complaint.  It had not done so at the time Plaintiff filed the

Motion to Compel.  The Motion to Compel eventually was resolved.

On May 4, 2012, Plaintiff filed another Motion to Extend the Discovery,

Dispositive Motion, and Pretrial Statement Deadlines.  Plaintiff noted it was still

awaiting production of documents from Defendant that might result in a further

deposition.  Plaintiff also noted the deposition of an incarcerated party was set for

June 13–14, 2012.  Plaintiff's Motion to Compel was still pending at that time.

Defendant did not object.  The Court extended the discovery deadline to June 21,

2012 and the dispositive motions and joint pretrial statement deadline to July 23,

2012.

On May 5, 2012, the Court held telephonic hearings on the still pending

Motion for Summary Judgment and Motion to Amend.  After hearing arguments,

the Court took the Motion to Amend under advisement and deferred ruling on

Defendant's summary judgment motion.

## CONCLUSIONS OF LAW

The issue before the Court is Plaintiff's ability to amend the Complaint.

Amendments to pleadings are governed by Federal Rule of Bankruptcy Procedure

7015, which incorporates Federal Rule of Civil Procedure 15(a).  Fed. R. Bankr. P.

7015.  The Eighth Circuit has held that Federal Rule of Civil Procedure 16 governs

post-scheduling order requests to amend pleadings.  Sarachek v. Chabad of North

Fulton, Inc. (In re Agriprocessors), Bankr. No. 08-02751, Adv. No. 10-09131,

2011 WL 4900037, at *4 (Bankr. N.D. Iowa Oct. 14, 2011). "The Court must

evaluate a post-scheduling order amendment under Rule 16(b) before considering

the more liberal amendment standards in Rule 15." Sherman v. Winco Fireworks,

532 F.3d 709, 716 (8th Cir. 2008).

## I.    Leave to File an Amended Complaint under Federal Rule 16

### A.    Background Facts Relevant to Rule 16

Plaintiff seeks leave to amend his original Complaint in order to increase the

number of transfers claimed as fraudulent conveyances or preferential transfers

from 327 to 751. The total value of all claims—including the new transfers—is

$2,945,551.09. Plaintiff's original complaint claimed $1,423,944.52 in preferential

or fraudulent transfers.

On February 4, 2011, the Court entered the original Scheduling Order

establishing March 7, 2011, as the final date to submit amended pleadings in

accordance with Rule 16(b). See Fed. R. Civ. P. 16(b)(3)(A). After that date

passed, on April 14, 2011, Plaintiff produced two sets of documents detailing

transfers from Debtor to Defendant within the two years prior to the filing of

Debtor's petition for bankruptcy in response to a request for documents from

Defendant. (ECF Doc. No. 51, at 4.) The first set of documents listed evidence of

the 327 transfers included in Plaintiff's original Complaint. The second set of

documents listed evidence of 424 checks signed by Debtor and made payable to

Defendant that Plaintiff inquired about but did not include in the Complaint. (Id.)

11

Plaintiff's counsel served Defendant with a first set of interrogatories on

May 3, 2011.  Interrogatory number one stated: "Identify every payment or other

transfer from the Debtor to you directly or indirectly within the two years prior to

the Petition Date, specifically noting any transfer appearing on Exhibit 'A'

attached to the Complaint that you assert you did not receive or received outside of

the Preference Period."  (ECF Doc. No. 39-1, at 3.)  Defendant did not respond

within 30 days as provided under the Federal Rules of Bankruptcy Procedure.  See

Fed. R. Bankr. P. 7033(b)(2).  Plaintiff sent two good-faith letters to Defendant on

August 17, 2011, and November 7, 2011, requesting a response to the first set of

interrogatories.  (ECF Doc. Nos. 39-2, 39-4.)

Defendant finally responded to the interrogatories on November 10, 2011,

stating "[s]ee checks supplied by Plaintiff in response to Defendant's Request for

Production of Documents, limited to those checks appearing on Exhibit A attached

to the complaint . . . ."  (ECF Doc. No. 39-5, at 3) (emphasis original).   Defendant

did not separately answer interrogatory number one nor indicate whether it had

received additional transfers (such as those identified in the "Second Set" of

documents produced by Plaintiff on April 14, 2011)—i.e., transfers beyond those

identified in the original Complaint.

This issue did not get settled between the parties and eventually led to a May

3, 2012 Motion to Compel Discovery.  As noted above, that issue was resolved in

May 2012.  Plaintiff has asserted that he learned of the possible additional transfers

during discovery—through subpoenas on Banks—but after the March 7, 2011

deadline for amendments in the scheduling order.  Plaintiff produced the

information he received from the Banks to the Defendant and then made the

interrogatory requests to confirm it.  Plaintiff asserts the lack of response by

Defendant delayed the filing of the Motion to Amend Complaint.

### B.    Standards under Federal Rule 16

"If a party files for leave to amend outside of the court's scheduling order,

the party must show cause to modify the schedule."  Popoalii v. Corr. Med. Servs.,

512 F.3d 488, 497 (8th Cir. 2008) (citing Fed. R. Civ. P. 16(b)).  "The schedule

'may be modified only for good cause and with the judge's consent.'"  Sherman,

532 F.3d at 714 (quoting Fed. R. Civ. P. 16(b)(4)).  "The primary measure of good

cause is the movant's diligence in attempting to meet the order's requirements."

Morrison Enter., LLC v. Dravo Corp., 638 F.3d 594, 610 (8th Cir. 2011) (quoting

Rahn v. Hawkins, 464 F.3d 813, 822 (8th Cir. 2006)).  "While prejudice to the

nonmovant resulting from modification of the scheduling order may also be a

relevant factor, generally we will not consider prejudice if the movant has not been

diligent in meeting the scheduling order's deadlines."  Sherman, 532 F.3d at 717

(citing Bradford v. DANA Corp., 249 F.3d 807, 809 (8th Cir. 2001)).  "In short,

'good cause' for a belated amendment under Rule 16(b) requires a showing that,

despite the diligence of the movant, the belated amendment could not reasonably

have been offered sooner."  Transamerica Life Ins. Co. v. Lincoln Nat. Life Ins.

Co., 590 F. Supp. 2d 1093, 1100 (N.D. Iowa 2008); SmithCo Mfg. Inc. v. Haldex

Brake Prod. Corp., 267 F.R.D. 250, 253–54 (N.D. Iowa 2010).

### C.    Analysis of Rule 16 under the Applicable Facts

Here, the facts indicate Plaintiff learned of possible additional transfers at

some point after the deadline in the scheduling order for amending pleadings of

March 7, 2011.  Plaintiff then served interrogatories on Best Value to confirm the

exact numbers and amounts of **all** transfers that might be recoverable.  In doing so,

Plaintiff sought to confirm the details of the additional transfers.

There is little dispute, if any, that Best Value failed to respond to that

discovery in a complete way for over a year—and only responded after a Motion to

Compel.  Even at the time Plaintiff filed the Motion to Amend—prompted in part

by the pending Motion for Summary Judgment—Plaintiff had not received the

information it requested from Best Value.

The uncontested facts also show, however, that Plaintiff knew additional

transfers probably occurred, at the latest, on or about April 14, 2011.  That is the

date Plaintiff first provided the Bank documents—obtained through subpoenas—

that establish the "additional" transfers.  Plaintiff provided the Bank documents in

response to Defendant's request for document production.  Plaintiff's first set of

interrogatories to Defendant, which sought to confirm the transfers in the Bank

documents, went out on May 3, 2011.  Plaintiff received an initial, but incomplete,

response on November 10, 2011, which was not helpful to clarify the additional

transfer issue.  Plaintiff waited until February 9, 2012, to write to Best Value to point out the deficiency.  Plaintiff wrote again on March 8, 2012 to raise the issue. On April 2, 2012, Plaintiff finally filed his Amended Complaint.

Cases have come to mixed conclusions when determining whether amendment under Rule 16 was proper.  Compare Rahn, 464 F.3d at 822 (finding no attempt to act diligently when amending pleadings); and Barstad v. Murray Cnty., 420 F.3d 880, 883 (8th Cir. 2005) (denied an amendment when party waited eight months to request an amendment of the scheduling order and knew of claims prior to filing original complaint); with Chabad, 2011 WL 4900037, at *5 (granting amendment when motion was filed within a week of plaintiff's discovery of new information); and Security First Bank v. Deitz (In re Deitz), 411 B.R. 650, 655 (Bankr. D.N.D. 2009) (granting permission to amend when new information surfaced and the motion was filed within three months of the original complaint). Most of the cases, however, are factually distinguishable.  The main distinction is that, in this case, Plaintiff tried to quickly confirm his discovery of the new claims through interrogatories, but Defendant delayed substantially in providing that information.

To decide this particular case, the Court must first determine if Plaintiff acted diligently in amending his Complaint.  The Court takes a liberal position on allowing amended pleadings in this particular bankruptcy case.  E.g., Sarachek v. Luana Savings Bank (In re Agriprocessors, Inc.), Bankr. No. 08-2751, Adv. No.

15

10-09234, 2012 WL 2974896, at *1 (Bankr. N.D. Iowa July 20, 2012); <u>Sarachek v.
The Right Place, Inc. (In re Agriprocessors, Inc.)</u>, Bankr. No. 08-2751, Adv. No.
10-09123, 2012 WL 2872054, at *1 (Bankr. N.D. Iowa July 12, 2012).   The Court
has acknowledged that Trustee is dealing with a large volume of adversaries
related to the Agriprocessors' bankruptcy filing and that the filing came after an
immigration raid and criminal charges against Sholom Rubashkin.   Many
witnesses disappeared shortly thereafter.   Many records also either disappeared or
were not well kept or readily accessible to Trustee.   The Court has also been liberal
in granting continuances and extensions to both parties in this case for similar
reasons.

Moreover, as noted above, Plaintiff's diligence was directly affected by
Defendant's delays in responding to discovery on this issue—discovery designed
to confirm the additional transfers.   Defendant bears responsibility for its initial
delay in responding to Plaintiff's May 3, 2011 interrogatories until November 10,
2011.   <u>See</u> Fed. R. Bankr. P. 7033(b)(2) ("The responding party must serve its
answers and any objections within 30 days after being served with the
interrogatories.").   It is also undisputed that, even when Defendant answered
interrogatory number one regarding all transfers from Debtor to Defendant, that
answer was incomplete.   <u>See</u> Fed. R. Bankr. P. 7033(b)(3) ("Each interrogatory
must . . . be answered separately and fully in writing under oath.").   The answer did
not address the additional transfers at all.   Plaintiff continued to pursue the

16

response with letters to Defendant's counsel in February and March. Defendant did not respond. Plaintiff, at that point, decided to move to amend and to compel discovery. In light of all these circumstances, the Court finds that Plaintiff acted diligently in moving to amend the Complaint.

In sum, Plaintiff did not move to amend immediately after discovering the additional transfers, but it did quickly act to confirm the details—and/or the existence of—the additional transfers. Defendant's failure to respond quickly or sufficiently explains and/or excuses Plaintiff's delay in moving to amend. Viewed in context, Plaintiff acted diligently.

Unfair prejudice to the party opposing the Motion to Amend also can be considered once the moving party meets the diligence test. <u>Sherman</u>, 532 F.3d at 717. The Court finds that the amendment is not unfairly prejudicial to Defendant. The Court has granted numerous extensions of discovery deadlines to both parties, and no trial date has yet been set. While the amendment has added numerous additional transfers, and significantly increased the dollars at stake, the claims and theories for recovery remain the same. The Court will certainly grant additional time to give Defendant an adequate opportunity to prepare for a trial or to do additional discovery on these additional transfers if necessary.

## II.   Leave to File an Amended Complaint under Federal Rule 15

The Court must next determine if the amendment meets the Rule 15 standard. "If a party meets the good cause standard in Rule 16(b), the Court must

17

then consider the amendment standards set out in Rule 15." <u>Chabad</u>, 2011 WL

4900037, at *4 (citing <u>Sherman</u>, 532 F.3d at 716).  Courts should "freely give

leave when justice so requires."  Fed. R. Civ. P. 15(a)(2); <u>see also</u> Fed. R. Bankr.

P. 7015.  The Court has substantial discretion in ruling on a motion for leave to

amend under Rule 15(a).  <u>Wintermute v. Kan. Bankers Sur. Co.</u>, 630 F.3d 1063,

1067 (8th Cir. 2011).   An amendment is proper unless there is evidence of: (1)

undue delay; (2) bad faith; (3) repeated failure to cure the deficiency in the

pleading through previous amendments; (4) undue prejudice to the non-movant; or

(5) futility of the amendment.  <u>See</u> <u>Popoalii</u>, 512 F.3d at 497.  Simple delay is

insufficient; at least one of these factors must be present to justify denying a

party's motion to amend.  <u>See</u> <u>id.</u>; <u>Bell v. Allstate Life Ins. Co.</u>, 160 F.3d 452, 454

(8th Cir. 1998).

Defendant contends that Plaintiff's amendment fails due to futility.  "Denial

of a motion for leave to amend on the basis of futility 'means the district court has

reached the legal conclusion that the amended complaint could not withstand a

motion to dismiss under Rule 12(b)(6) of the Federal Rule of Civil Procedure.'"

<u>Zutz v. Nelson</u>, 601 F.3d 842, 850 (8th Cir. 2010) (quoting <u>Cornelia I. Crowell</u>

<u>GST Trust v. Possis Med., Inc.</u>, 519 F.3d 778, 782 (8th Cir. 2008)).  Defendant

argues the Amended Complaint alleges the same type of transfers as the original

Complaint and therefore should be dismissed on the same theories established in

Defendant's Motion for Summary Judgment.  The summary judgment hearing,

18

however, has been continued pending resolution of this issue and possible

additional discovery.  The Court concludes this argument can be addressed as part

of the summary judgment.  Defendant has not established futility of the

amendment on this record.

Defendant also argues that a party may not amend its pleading once it is

faced with a dispositive motion.  See e.g., Moldea v. The New York Times Co.,

793 F. Supp. 338, 338 (D.D.C. 1992), aff'd, 22 F.3d 310 (D.C. Cir. 1994) ("It is

settled that where a defendant has filed a dispositive motion . . . denial of

permission to amend is proper."); Wilderness Soc. v. Griles, 824 F.2d 4 (D.C. Cir.

1987) (affirming the lower court's denial of leave to amend when motion was filed

more than a year after the original complaint and following a dispositive motion).

Neither this Court nor the Eighth Circuit, however, endorses a bright-line rule

against amendments filed after the opposing party has filed a dispositive motion.

See e.g., Pure Country, Inc. v. Sigma Chi Fraternity, 312 F.3d 952, 956 (8th Cir.

2002) (finding a motion to amend as a matter of course renders a pending motion

to dismiss moot).  Rather, any relation in time to a dispositive motion filed against

the moving party should be viewed as part of any undue delay the motion may

cause.  See St. Paul Reinsurance Co. Ltd. v. Commercial Fin. Corp., 144 F. Supp.

2d 1057, 1067–68 (N.D. Iowa 2001).  As previously discussed, the Court

concludes that no undue delay exists.  Consequently, this argument is

unpersuasive.  Plaintiff's Amended Complaint satisfies Rule 15.

19

## III.   Statute of Limitations

Defendant's final argument in opposition to Plaintiff's Motion for Leave to

Amend is that the amendment would violate the statute of limitations on filing

adversary actions.  Normally, the trustee is allowed two years in which to file an

adversary against another party.  11 U.S.C. § 108(a); see also Butler v. Bantz (In re

Howe Grain, Inc.), 176 B.R. 515, 521–22 (Bankr. D. Neb. 1994) (finding trustee is

generally allowed two years from the date of filing the petition).

Federal Rule of Civil Procedure 15(c), applicable to bankruptcy courts

through Federal Rule of Bankruptcy Procedure 7015, allows relation back of a

claim or defense asserted in an amended pleading if the claim or defense "arose out

of the conduct, transactions, or occurrences set forth or attempted to be set forth in

the original pleading."  Fed. R. Civ. P. 15(c); see also Lincoln Sav. Bank v. Freese

(In re Freese), Bankr. No. 09-9140, 2010 WL 2978527, at *3 (Bankr. N.D. Iowa

July 27, 2010).  "The court's basic inquiry is whether the amended pleading is

related to the general fact situation alleged in the original pleading, so that the

defendant had all the notice that statutes of limitations were intended to provide."

Freese, 2010 WL 2978527, at *3; Alpern v. UtiliCorp. United, Inc., 84 F.3d 1525,

1543 (8th Cir. 1996); Bergquist v. Anderson-Greenwood Aviation Corp. (In re

Bellanca Aircraft Corp.), 850 F.2d 1275, 1283 (8th Cir. 1988).

Defendant argues that "[i]n the context of preference actions, each potential

transfer is a separate and distinct transaction: a preference action based on one

20

transfer does not put defendant on notice of claims with respect to any other unidentified transfers." <u>Unsecured Creditors Comm. v. Pirelli Commc'ns Cables and Sys. (In re 360Networks (USA) Inc.)</u>, 367 B.R. 428, 344 (S.D.N.Y. 2007). The Eighth Circuit, however, has held "[t]he test is whether [debtor and defendant] were put on notice that transfers of this type were included in [the trustee's] complaint." <u>Bellanca</u>, 850 F.2d at 1283.

The Court finds that the transfers included in the original Complaint put Defendant on notice that all transfers between Debtor and Defendant, in the two years prior to Debtor's bankruptcy petition, were included in Plaintiff's pleading. (Pl.'s Ex. 1, ECF Doc. No. 39.)  The Court finds that the Amended Complaint sufficiently relates back to the original Complaint and is not barred by the statute of limitations.  <u>See</u> <u>Freese</u>, 2010 WL 2978527, at *3.

**WHEREFORE**, Plaintiff's Motion for Leave to File an Amended Complaint is **GRANTED**.

Dated and Entered: October 15, 2012

_____

**THAD J. COLLINS**
**CHIEF BANKRUPTCY JUDGE**

21